**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Dalit Cohen,<br><br>                               Plaintiff,<br><br>                  -v-<br><br>Nutricost,<br><br>                             Defendant. | 2:23-cv-6387<br>(NJC) (AYS) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

Plaintiff Dalit Cohen ("Cohen") brings claims on behalf of herself and similarly situated individuals against Defendant Nutricost ("Nutricost") for mislabeling magnesium supplements in violation of New York statutory and common law. (*See* Compl., ECF No. 1.) The Complaint brings a fraudulent concealment claim on behalf of a proposed nationwide class of consumers and claims for breach of express warranty under New York Uniform Commercial Code (N.Y. U.C.C.") § 2-313 ("Section 2-313"), violations of N.Y. General Business Law §§ 349 and 350 ("Section 349" and "Section 350"), and breach of the implied warranty of merchantability pursuant to N.Y. U.C.C. § 2-314 on behalf of a proposed class of New York consumers. (*Id.*) Nutricost moves to dismiss the Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Mot., ECF No. 22.)

Before me is the fully-briefed motion. For the following reasons, I grant the Motion to Dismiss as to the fraudulent concealment claim and deny it as to the Section 349 and Section 350 claims and the breach of express warranty claim. Because Cohen has withdrawn the claim for

breach of the implied warranty of merchantability, the portion of the Motion seeking to dismiss that claim is dismissed as moot.

## BACKGROUND

I assume as true all well-pled allegations in the Complaint and draw all reasonable inferences in favor of Cohen in considering Nutricost's Motion to Dismiss. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 n.2 (2d Cir. 2021). The following facts are taken from the Complaint.

Nutricost manufactures and sells a magnesium dietary supplement (the "Product"), which purports to contain 420 milligrams ("mg") of magnesium derived from magnesium glycinate in each two-capsule serving. (Compl. ¶¶ 1–2.) Both the front and back of the Product's bottle state that it contains magnesium glycinate: the front label states that the Product is "Magnesium Glycinate" and contains "420 MG Per Serving," and the back label states that the Product contains 420 mg of "Magnesium (as magnesium glycinate)." (*Id.* ¶¶ 12–13.)

According to Cohen, it is impossible to fit 420 mg of magnesium derived from magnesium glycinate in two of the size 00 capsules into which the Product is portioned. (*Id.* ¶¶ 2, 19–20.) This is because magnesium glycinate allegedly has too low a concentration of magnesium to contain 420 mg of magnesium in two size 00 capsules. (*Id.* ¶¶ 2, 4, 20–25.)[1] As a result, Cohen argues that the Product does not contain 420 mg of magnesium derived from

---

[1] The Complaint does not consistently describe the type of magnesium at issue. It alternates between alleging that the Product does not contain "420 mg of magnesium *derived from* magnesium glycinate" (Compl. ¶¶ 2, 4, 17 (emphasis supplied)) and alleging that the Product "*do[es] not contain 420 mg of magnesium glycinate* in a 2-capsule serving and thus do[es] not contain the quantity of magnesium that is advertised" (*id.* ¶ 4 (emphasis supplied); *see also* ¶¶ 15, 19). I understand the Complaint to allege that the Product does not contain 420 mg of magnesium derived from magnesium glycinate.

magnesium glycinate for every two capsules as advertised and warranted on its labels. (*Id.* ¶¶ 4, 25.) Cohen alleges that the amount and type of magnesium in the Product is material to a consumer seeking to purchase magnesium supplements because magnesium glycinate is known to be a highly absorbable form of magnesium. (*Id.* ¶¶ 9–10.)

Within the four years prior to the August 25, 2023 filing of the Complaint, Cohen purchased the Product in New York, including by making a purchase at a Target retail store in or around September 2022. (*Id.* ¶ 5.) Cohen alleges that she "view[ed] the front and back label" of the supplements "on each occasion that she purchased the product" within the last four years. (*Id.* ¶ 5.)

Cohen alleges that Nutricost has sold the Product to thousands of New York consumers and thousands of nationwide consumers during the four years preceding the filing of the Complaint. (*Id.* ¶ 37.)

## PROCEDURAL HISTORY

On August 25, 2023, Cohen filed the Complaint in this action. (Compl.) The Complaint brings a claim for fraudulent concealment under New York law on behalf of a nationwide class of consumers. (*Id.* ¶¶ 43–56.) It also brings claims for breach of express warranty under N.Y. U.C.C. § 2-313, violations of Section 349 and Section 350 of N.Y. General Business Law, and breach of the implied warranty of merchantability under N.Y. U.C.C. § 2-314 on behalf of a class of New York consumers. (*Id.* ¶¶ 57–79.) On October 27, 2023, Nutricost filed a letter seeking a pre-motion conference regarding an anticipated motion to dismiss. (ECF No. 13.) In Cohen's November 1, 2023 response, she agreed to withdraw her implied warranty of merchantability claim and her request for injunctive relief. (ECF No. 14 at 4 n.4.) On November 13, 2023, I waived the pre-motion conference requirement and ordered briefing on the motion to

dismiss. (ECF No. 15.) Nutricost filed its fully briefed Motion to Dismiss on February 1, 2024.

(Mot., ECF No. 22; Mem., ECF No. 22-1; Opp'n Br., ECF No. 23; Reply Br., ECF No. 24.)

## DISCUSSION

### I.   Jurisdiction

#### A.   Jurisdiction Over Cohen's Claims

This Court has subject matter jurisdiction over this action pursuant to the Class Action

Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). The Complaint alleges that Nutricost sold the

product in question to more than 100 people during the relevant period, that those sales and

Cohen's requested relief exceed $5,000,000, and that there is minimal diversity because Cohen is

a New York resident and Nutricost is a citizen of Utah. (Compl. ¶ 7; Order to Show Cause, Aug.

2, 2024; Elec. Order, Aug. 12, 2024.) By sworn affidavit, Cohen attests that she resides, works,

and is registered to vote in New York, that she intends to remain in New York for the indefinite

future, and that she has a New York driver's license and pays taxes to New York. (ECF No. 31,

31-1.) Cohen has thus demonstrated that New York is her domicile, and that she is a citizen of

New York for jurisdiction purposes. *See Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49,

53 (2d Cir. 2019) ("An individual's citizenship, within the meaning of the diversity statute, is

determined by his domicile," or in other words, "the place where a person has his true fixed

home and principal establishment, and to which, whenever he is absent, he has the intention of

returning."). The requirements for CAFA jurisdiction under 28 U.S.C. § 1332(d) are met because

the Complaint plausibly alleges that the amount in controversy exceeds $5,000,000 and there is

minimal diversity between Cohen, a New York citizen, and Nutricost, a Utah corporation with a

principal place of business in Utah. (Elec. Order, Aug. 12, 2024; Order to Show Cause, Aug. 2,

2024.)

The Court has personal jurisdiction over Nutricost regarding Cohen's claims because Nutricost has minimum contacts with New York. A court considering personal jurisdiction over a foreign defendant, first looks "to the law of the forum state to determine whether personal jurisdiction will lie" and then considers "whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013).

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). Jurisdiction under Section 302(a)(1) requires showing that "(1) the defendant must have transacted business within the state" and that "(2) the claim asserted must arise from that business activity." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 129 (2d Cir. 2022) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 273 (N.Y. 1981)). The second prong of the test "does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but "instead, it requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" *Licci*, 732 F.3d at 168–69 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (N.Y. 2012)).

The Due Process Clause requires that the defendant "have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Licci*, 732 F.3d at 169 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum contacts analysis has three steps. *U.S. Bank Nat'l Assoc. v.*

5

*Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019). "First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State." *Id.* (citing *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 877 (2011) (plurality opinion)). "Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct." *Id.* And third, the court must determine that jurisdiction is "reasonable under the circumstances." *Id.*

Here, the Complaint alleges that Nutricost sold the Product in New York, where Cohen purchased it, and it is clear that Cohen's claims for fraud, deception, misrepresentation, and breach of warranty arise out of that purchase. (Compl. ¶ 5.) Because Nutricost "purposefully availed itself of the privilege of doing business in" New York, jurisdiction is reasonable under the circumstances. *U.S. Bank Nat'l Assoc.*, 916 F.3d at 150. This Court therefore has specific personal jurisdiction over Nutricost with regard to Cohen's claims. *Licci*, 732 F.3d at 170.

Venue is proper under 28 U.S.C. § 1391(b)(2) because Cohen purchased the Product in this judicial district.

    B.  <u>Jurisdiction Over the Claims of Out-of-State Members of the Putative Class</u>

Nutricost argues that under *Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773, 1781, 1783 (2017), this Court lacks specific jurisdiction with respect to the claims of out-of-state members of the putative class. (Mem. at 10.) Because the Second Circuit has not addressed this issue, Nutricost urges me to "conduct [my] own constitutional analysis and dismiss the claims of out-of-state absent class members." (*Id.* at 11.) Cohen argues for application of the "majority position" of courts including the Seventh and D.C. Circuits under which *Bristol-Myers Squibb* has no impact on whether a federal court has personal jurisdiction over the defendant as to the claims of out-of-state members of a putative class. (Opp'n Br. at 18.) According to Cohen,

6

"because Defendant does not challenge that the Court has specific personal jurisdiction over Plaintiff, a New York citizen who purchased Defendant's Supplements within this District . . . the Court need not conduct an independent analysis to determine whether it has personal jurisdiction over individual, out-of-state absent class members." (*Id.* at 19.)

The sole claim brought by Cohen on behalf of a putative nationwide class is the fraudulent concealment claim. As discussed below, that claim is dismissed for failure to state a claim under Rule 12(b)(6). Section II.A.2 *infra*. Thus, I do not need to reach the question of whether this Court has jurisdiction over the claims of out-of-state members of the putative nationwide class against Nutricost. Accordingly, I dismiss as moot the portion of Nutricost's Motion to Dismiss that seeks to dismiss the claims of absent putative class members on personal jurisdiction grounds.

## II.      Failure to State a Claim

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Green v. Dep't of Educ. of the City of New York*, 16 F.4th 1070, 1076–77 (2d Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2] "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accepts all factual allegations as true" and "draws all reasonable inferences in favor of the plaintiffs." *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hamilton v. Westchester Cnty.*, 3 F.4th 86, 91 (2d Cir. 2021). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[2] Unless otherwise indicated, case quotations omit all internal quotation marks, alterations, brackets, and citations.

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*.; *accord We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.*

Nutricost argues that the Complaint should be dismissed because it fails to state a claim for relief. First, Nutricost argues that the fraudulent concealment claim fails to plead fraudulent intent or reliance with the particularity required to meet the heightened standards of Rule 9(b), Fed. R. Civ. P. (Mem. at 1.) Second, Nutricost contends that the General Business Law claims fail to plead reliance or injury. (*Id.*) Third, Nutricost argues that the breach of express warranty claim fails for lack of privity because Cohen alleges only economic loss. (*Id*.)[3] For the following reasons, the Complaint fails to plead a fraudulent concealment claim, but plausibly alleges claims under Sections 349 and 350 and a claim for breach of express warranty.

    A.  <u>The Complaint Fails to Plausibly Allege a Claim for Fraudulent Concealment.</u>

Cohen alleges a claim for fraudulent concealment under New York law on behalf of a nationwide class of consumers. (Compl. ¶¶ 43–56.) Nutricost argues that this claim should be dismissed because the Complaint fails to plead facts giving rise to a strong inference of fraudulent intent and fails to plead reliance with particularity. (Mem. at 3–6.) For the following

---

[3] Nutricost also argues that I should dismiss the claim for breach of the implied warranty of merchantability because Cohen has agreed to withdraw that claim and her request for injunctive relief. (Mem. at 1, 8.) Since Cohen has already withdrawn that claim and request for relief, I deny the Motion to Dismiss that claim as moot. (ECF No. 14 at 3 n.4.)

reasons, the Complaint pleads reliance with particularity, but fails to plead fraudulent intent with particularity. Because fraudulent intent is a required element of Cohen's fraudulent concealment claim, I grant Nutricost's Motion to Dismiss the fraudulent concealment claim.

### 1. The Complaint Pleads Reliance with Particularity.

Nutricost argues that the fraudulent concealment claim should be dismissed because the Complaint fails to allege with particularity that Cohen reasonably relied on the alleged misrepresentations. According to Nutricost, the Complaint's "boilerplate allegation that [Cohen] viewed the front and back label . . . does not allege with specificity that she read and relied upon the 'as magnesium glycinate' statement before her purchase or (even if she did read it) what she understood it to mean." (Mem. at 6.)

In opposition, Cohen argues that the Complaint pleads reliance with particularity because it alleges that Cohen viewed the front and back label of the Product each time that she purchased it and that she relied upon the labels to disclose material information about the Product. (Opp'n Br. at 14–15.) Cohen underscores that "the entirety of the front label represents" that the Product contains 420 mg of magnesium derived from magnesium glycinate per serving and the same content is "prominently" stated on the back label, such that it "is impossible to look at the labels and avoid" the misrepresentations. (Id.)

A plaintiff alleging fraud under New York law must establish that they reasonably relied on the defendant's alleged misrepresentations. *Regina Metro. Co., LLC v. N.Y. Div. of Hous. & Cmty. Renewal*, 154 N.E.3d 972, 982 n.7 (2020) ("Fraud consists of evidence of a representation of material fact, falsity, scienter, reliance and injury."):

A plaintiff alleging common law fraud must satisfy both the facial plausibility standard of Rule 12(b)(6) and the heightened pleading standard of Rule 9(b). *Loreley Fin. (Jersey) No. 3 Ltd.*

*v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015). A complaint satisfies Rule 9(b) where it "state[s] with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff pleads reliance with particularity sufficient for Rule 9(b) where they identify the specific misrepresentations on which they relied. *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 312 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016) (finding that plaintiff failed to plead reliance with particularity under Rule 9(b) where the complaint failed to identify the specific misrepresentations relied upon in deciding whether to purchase Bear Stearns securities).

Drawing all inferences in favor of Cohen, I find that the Complaint pleads reliance with particularity as required by Rule 9(b). It alleges that Cohen "viewed the front and back label" of the Product each time she purchased it and that both labels prominently advertise that the Product contains 420 mg of magnesium as magnesium glycinate. (Compl. ¶¶ 5, 12–13.) The images of the Product included in the Complaint demonstrate that the front label conspicuously states that the Product contains "Magnesium Glycinate" and "420 MG Per Serving" and the back label clearly states "420 mg" of "Magnesium (as magnesium glycinate)." (*Id.* ¶¶ 12–13.) The Complaint's allegation that Cohen "viewed" the front and back label and its related description of the labels' content and inclusion of photographs sufficiently plead that Cohen relied on the content of the labels because "to view" is defined as "to look at attentively," and is synonymous with "to scrutinize." *View*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/view (accessed Aug. 2, 2024). Therefore, the Complaint pleads with particularity that Cohen viewed the representations on the front and back label of the Product advertising that it contained 420 mg of magnesium derived from magnesium glycinate and relied

on them each time she purchased the supplements. Accordingly, I deny the portion of Nutricost's Motion that seeks to dismiss the fraudulent concealment claim for failure to plead reliance with particularity.

> 2. *The Complaint Fails to Plead Facts that Give Rise to a Strong Inference of Fraudulent Intent.*

According to Nutricost, the Complaint fails to plead facts that give rise to a strong inference of fraudulent intent because the Complaint's only allegation of fraudulent intent is the boilerplate, conclusory allegation that Nutricost "knew or should have known" that the Product did not contain 420 mg of magnesium derived from magnesium glycinate as advertised. (Mem. at 4.) Nutricost argues that this allegation alone is insufficient because the Complaint otherwise lacks facts plausibly alleging how Nutricost knew that its statements were false, which Nutricost employees allegedly possessed that knowledge, or how or when they supposedly gained that knowledge. (*Id.* at 4, 5.) Nutricost also argues that the allegation that it sold more of the Product or at higher prices is insufficient to give rise to a strong inference of fraudulent intent. (*Id.* at 5.)

In opposition, Cohen argues that the Complaint alleges a strong inference of fraudulent intent because it alleges the following facts, which show circumstantial evidence of "conscious misbehavior or recklessness": that Nutricost knew the Product did not contain the amount of magnesium derived from magnesium glycinate as advertised; that it was common knowledge in the nutritional supplement industry that the content of magnesium derived from magnesium glycinate as advertised was "physically impossible" given the size of the capsule; that consumer complaints on Nutricost's website put the company on notice that the Product did not contain the amount of magnesium derived from magnesium glycinate advertised; and that despite its knowledge of these things, Nutricost emphasized the Product's alleged magnesium derived from magnesium glycinate content on its front and back labels. (Opp'n Br. at 10–11.)

On reply, Nutricost reiterates its argument and adds that Cohen's reliance on consumer complaints fails because the Complaint does not allege when the reviews were posted on Nutricost's website, that they were posted before Cohen's alleged purchase, or that any responsible person at Nutricost was aware of the reviews but still decided to label the Product as containing 420 mg of magnesium derived from magnesium glycinate. (Reply Br. at 2–3.)

Under New York law, a plaintiff alleging fraud must establish that the defendant made a material false representation with the intent to defraud the plaintiff and that the plaintiff reasonably relied on the representation and suffered damages as a result. *Regina Metro. Co.*, 154 N.E.3d at 982 n.7 ("Fraud consists of evidence of a representation of material fact, falsity, scienter, reliance and injury."). Under Rule 9(b), a complaint must plead facts that "give rise to a strong inference of fraudulent intent." *Fed. Deposit Ins. Corp. v. Fifth Third Bank, N.A.*, No. 23-cv-209, 2023 WL 7130553, at *2 (2d Cir. Oct. 30, 2023) (quoting *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020)). Facts giving rise to a strong inference of intent "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* "An inference is strong if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Loreley*, 797 F.3d at 176–77. "In determining whether this strength-of-inference requirement is met, a court considers the complaint in its entirety and takes into account plausible opposing inferences." *Id.*

Nutricost relies on two cases to argue that the Complaint fails to meet Rule 9(b)'s heightened pleading standard. (Mem. at 4, 5.) First, In *Duran v. Henkel of Am., Inc.*, the plaintiff alleged the defendant's fraudulent intent based on allegations that the defendant advertised a hair gel as "no flakes" even though it contained PVP, which tends to produce flakes. 450 F. Supp. 3d

337, 353–54 (S.D.N.Y. 2020). In support of this argument, the plaintiff cited articles by cosmetic scientists and a pharmaceutical professor and alleged "upon information and belief" that the defendant employed scientists familiar with PVP and its flaking propensity. *Id.* The court found that, while it was a close call, the plaintiff had failed to show a strong inference of fraudulent intent through circumstantial evidence of conscious misbehavior or recklessness because the complaint failed to allege that any particular corporate officer was aware that PVP caused flaking, read the articles plaintiff cited, knew that PVP was an ingredient of the product, and marketed the product as "no flakes" product anyway. *Id.* at 355.

Second, in *Quiroz v. Beaverton Foods, Inc.*, the plaintiff alleged the defendant's fraudulent intent based on allegations that the defendant advertised mustard as containing "no preservatives" even though it contained citric acid, and allegations made "upon information and belief" that the defendant employed food scientists who were familiar with the basic properties of citric acid and therefore the defendant knew that citric acid was a preservative. No. 17-cv-7348, 2019 WL 1473088, at *10 (E.D.N.Y. Mar. 31, 2019). The court found that these allegations amounted to "simple knowledge" that the mustard label was "false," which was insufficient to support an inference of fraudulent intent. *Id.* at *11.

While the facts alleged in the Complaint present a close call, they fail to give rise to a strong inference of fraudulent intent either by demonstrating motive and opportunity to commit fraud or by constituting strong circumstantial evidence of conscious misbehavior or recklessness. The Complaint's explicit allegations as to Nutricost's intent are conclusory: that Nutricost "concealed and suppressed material facts concerning" the Product (Compl. ¶ 44; *see also id.* ¶ 47); that Nutricost "knew or should have known that the" Product did not contain the 420 mg of magnesium as magnesium glycinate advertised (*id*. ¶ 45); and that Nutricost's "actions and

13

omissions were done maliciously, oppressively, deliberately, with intent to defraud . . . ." (*id.* ¶ 54).

The Complaint also alleges the following facts in an effort to allege circumstantial evidence of conscious misbehavior or recklessness: Nutricost formulates, manufactures, markets and sells the Product (*id.* ¶¶ 1, 6); it is physically impossible to fit 420 mg of magnesium derived from magnesium glycinate into the two size 00 capsules Nutricost uses for the Product (*id.* ¶¶ 18–26); Nutricost labels and markets the Product in a way that emphasizes the alleged content of magnesium derived from magnesium glycinate (*id.* ¶¶ 11–15); competitor products using the same size 00 capsules advertise a lower content of magnesium derived from magnesium glycinate for two capsules (*id.* ¶ 23 n.5); and consumers posted complaints to Nutricost's website of side effects inconsistent with consuming magnesium derived from magnesium glycinate as opposed to magnesium from a different source (*id.* ¶ 26 n.6).[4] But like the plaintiffs in *Duran* and *Quiroz*, Cohen fails to allege that any particular Nutricost corporate officer was aware that the Product could not fit 420 mg of magnesium derived from magnesium glycinate into two size 00 capsules as advertised, but nevertheless advertised the Product to contain 420 mg of magnesium derived from magnesium glycinate. Moreover, the Complaint fails to allege when the consumer complaints were posted to Nutricost's website, much less that the complaints were

---

[4] Cohen does not argue that the Complaint gives rise to a strong inference of fraudulent intent by alleging facts that would demonstrate motive and opportunity. (*See* Opp'n at 10 (arguing only that "Plaintiff alleges a strong inference of fraudulent intent by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.").) The Complaint's sole factual allegation concerning opportunity is the allegation that Nutricost "formulates, manufactures, advertises and sells" the Product. (Compl. ¶ 1.) But the Complaint fails to allege *any* facts showing motive; the Complaint's sole allegation as to motive is the conclusory allegation that Nutricost's "actions and omissions were done . . . with intent to defraud, and . . . to enrich [Nutricost]." *Id.* ¶ 54; *Iqbal*, 556 U.S. at 678 (noting that a complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement.").

viewed by Nutricost's leadership before Cohen read the challenged labels and decided to buy the Product.

Almost all of the cases that Cohen cites support this holding because the plaintiffs in those cases proffered more support for their fraudulent intent allegations than Cohen submits here. In *Natale v. 9199-4467 Quebec Inc.*, the plaintiff alleged fraudulent intent based on allegations that the defendant marketed its pet poop bags as "Certified Compostable" even though its website stated that no composting facilities in the United States could compost the product and its accompanying waste, the FTC had stated that compostable claims on dog waste products are generally untrue, and the defendant's blog admitted as much. No. 21-cv-6775, 2023 WL 4850531, at *1–2 (E.D.N.Y. July 28, 2023). The court found these allegations to be sufficient because the acknowledgement in the defendant's website that there were no relevant composting facilities in the United States constituted strong circumstantial evidence of conscious misbehavior. *Id.* at *11.

Similarly, in *Hughes v. Ester C Co.*, the plaintiffs alleged fraudulent intent in a case where the defendant marketed a product as a superior source of vitamin C and an immune system defense. 930 F. Supp. 2d 439, 473 (E.D.N.Y. 2013). The court found that the plaintiffs sufficiently alleged fraudulent intent because they alleged that the defendant's representations were unsupported by scientific evidence, that a study conducted by the Linus Pauling Institute called into question the efficacy of the product's main ingredients, and that the FTC investigated similar representations about competitor products. *Id.* at 450, 473.

Finally, in *Mogull v. Pete & Gerry's Organics, LLC*, the plaintiff alleged fraudulent intent based on allegations that the defendant labelled its eggs as "free-range" even though the complaint provided photographs purporting to show that the defendant's hens were "crammed

into overcrowded sheds" with no or limited access to outdoor space. 588 F. Supp. 3d 448, 452 (S.D.N.Y. 2022). The court found that the plaintiff adequately pled fraudulent intent by alleging that the defendant was a top distributor of eggs, was aware of its farmers' practices and how the term "free-range" was perceived by consumers, and went to great lengths to advertise the eggs as "free-range" eggs produced by hens roaming freely in ample space outdoors. *Id.* at 455.

Unlike the *Natale*, *Hughes*, and *Mogull* plaintiffs, Cohen cites no statement by the FTC or other consumer protection bodies about the amount of magnesium derived from magnesium glycinate that can fit into size 00 capsules, no independent scientific or chemical analysis of the Product, and no analogous admission by Nutricost that its Product does not contain the 420 mg of magnesium derived from magnesium glycinate as advertised. Contrary to Cohen's argument, it is not "common knowledge" that it is "*physically impossible*" to fit 420 mg of magnesium derived from magnesium glycinate in two size 00 capsules. (Opp'n Br. at 10.) Instead, this argument requires some technical knowledge and Cohen has failed to allege that Nutricost was aware of this, but still decided to market the Product as it did. The only case that Cohen cites that supports her argument is *Elkind v. Revlon Consumer Products Corp.*, where the court found that plaintiffs pled sufficient facts to support fraudulent intent by "pleading that Defendant knew the phrase did not have the effects suggested." No. 14-cv-2484, 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015). The weight of the applicable case law suggests that this approach is an outlier and I decline to follow it.

Finally, Cohen's brief suggests that the Complaint pleads facts supporting a strong inference of fraudulent intent because Nutricost changed the Product's front and back labels so that they no longer advertise that the Product contains 420 mg of magnesium derived from

magnesium glyncinate. (Opp'n Br. at 6.) These facts are not alleged in the Complaint and cannot be considered in resolving the Motion to Dismiss. (*See generally* Compl.)

Accordingly, even after drawing all inferences in favor of Cohen, I find that the Complaint fails to plead fraudulent intent with particularity. The fraudulent concealment claim is therefore dismissed for failure to state a claim.

> B. <u>The Complaint Plausibly Alleges Injury Sufficient for the N.Y. General Business Law Claims.</u>

Nutricost argues that Cohen's claims under Sections 349 and 350 of the N.Y. General Business Law should be dismissed for two reasons. (Mem. at 7–8.) First, Nutricost asserts that the Complaint fails to plausibly allege reliance and rehearses the same arguments made with respect to the fraudulent concealment claim. (*Id.* at 7.) Second, Nutricost contends that Cohen fails to plausibly allege that she was injured by paying a price premium because the Complaint lacks any facts as to what price she paid, what the premium was, or what the price of a non-premium product would be. (*Id.* at 7–8.) Relying on *Colella v. Atkins Nutritionals, Inc.*, 348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018), Nutricost argues that allegations that a plaintiff paid more for a product than they would have without the alleged misrepresentation does not satisfy the *Iqbal/Twombly* standard because it alleges the conclusion that the product would have cost less but for the alleged misrepresentation without any factual enhancement. (Mem. at 8.)

In opposition, Cohen argues that she plausibly alleges that Nutricost charged a price premium because the Complaint alleges that the difference between the Product that Nutricost sold versus the product it promised is "significant and material," and that the difference impacts both the benefits provided to consumers and the actual value of the Product. (Opp'n Br. at 15–16.) Cohen further contends that the Complaint alleges that misbranded supplements like the Product have no economic value and are worthless. (*Id.*) Cohen also asserts that *Colella* is an

17

outlier and that the majority of courts do not require plaintiffs to allege the price of competing products to establish a price premium injury. (*Id.* at 16–17.)

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a), (h). Similarly, Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." *Id.* § 350. A plaintiff alleging a violation of Section 349 or Section 350 must establish "that a defendant has engaged in (1) consumer-oriented conduct, that is (2) materially misleading, and that (3) the plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Plavin v. Grp. Health Inc.*, 146 N.E.3d 1164, 1168 (N.Y. 2020). Regarding the third prong, "a plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000). "Justifiable reliance by the plaintiff is not an element of [either] statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012); *see also Eidelman v. Sun Prod. Corp.*, No. 21-cv-1046, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022).

As an initial matter, Nutricost's argument that the Section 349 and Section 350 claims fail to plead reliance is foreclosed by New York law, which does not require justifiable reliance for those claims. *Koch*, 967 N.E.2d at 676. I therefore deny the portion of Nutricost's Motion to Dismiss that seeks to dismiss the Section 349 and Section 350 claims on this basis.

Drawing all inferences in favor of Cohen, I find that the Complaint plausibly alleges injury sufficient for claims under Sections 349 and 350. The Complaint alleges that Cohen suffered actual injury when she purchased the misbranded Product because such a product has "no economic value and [is] worthless," and because Cohen "would not have purchased [the] Product[], or would have only paid for the magnesium as magnesium glycinate actually delivered

<u>with the Supplements.</u>" (Compl. ¶ 33 (emphasis supplied).) Thus, contrary to Nutricost's

contention, the Complaint alleges not only that the Product has no value, but also that Cohen

would have paid less for the Product had it not been misbranded. The Complaint also alleges that

the difference between the product promised and the Product sold is significant and material

because Cohen and other consumers are left to ingest magnesium derived from an "inferior and

less desirable" source than the magnesium glycinate advertised on the label. (*Id.* ¶ 32.) These

allegations plausibly allege actual injury sufficient for Cohen's claims under Sections 349 and

350. *Cf. Donahue v. Ferolito, Vultaggio & Sons*, 786 N.Y.S.2d 153, 154 (N.Y. App. Div. 2004)

(finding plaintiffs failed to allege injury where they did not allege that "the cost of the beverages

was inflated by these misrepresentations or that their health was adversely affected by drinking

the beverages"). Accordingly, I deny the portion of Nutricost's Motion that seeks dismissal of

the Section 349 and Section 350 claims.

C.   <u>The Complaint Plausibly Alleges Breach of Express Warranty.</u>

Nutricost argues that the claim for breach of express warranty should be dismissed

because Cohen alleges that she purchased the supplements from Target, rather than from

Nutricost, and thus fails to allege privity, which is a required element where the plaintiff alleges

only economic loss. (Mem. at 8–9.) In opposition, Cohen argues that New York law does not

require privity between the purchaser and seller where only economic damages are alleged for a

breach of express warranty claim. (Opp'n Br. at 17–18.) On reply, Nutricost argues for the first

time that the Second Circuit settled this question in *MacNaughton v. Young Living Essential*

*Oils, LC*, 67 F.4th 89, 101 (2d Cir. 2023), where it held that New York law requires privity for

breach of express warranty claims unless an exception applies. (Reply Br. at 6–7.) For the

following reasons, the Complaint plausibly alleges a claim for breach of express warranty.

19

In New York, express warranties are governed by Section 2-313, which provides that an express warranty includes "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. § 2-313(1)(a). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id.* § 2-313(1)(b). N.Y. U.C.C. § 2-318 ("Section 2-318") further provides that "[a] seller's warranty whether express or implied extends" to any foreseeable user "who is injured in person by breach of the warranty." *Id.* § 2-318. Section 2-313 claims "protect consumers who rely on either an explicit or implicit fact or promise that the seller knew the consumer had in mind and relied on when purchasing." *MacNaughton*, 67 F.4th at 100.

There is a split between New York appellate courts and the Second Circuit as to whether privity is a required element of a breach of express warranty claim under New York law. In 1962, the New York Court of Appeals dispensed with the privity requirement for breach of express warranty claims "by a remote purchaser against a manufacturer" where the plaintiff alleged only economic loss and where the manufacturer is alleged to have "induced the purchase by representing the quality of the goods in public advertising and on labels which accompanied the goods." *Randy Knitwear, Inc. v. Am. Cyanamid Co.*, 11 N.Y.2d 5, 16 (N.Y. 1962). The New York Court of Appeals reasoned that a manufacturer who has "invited and solicited the use" of its product "should not be permitted to avoid responsibility by claiming that he made no contract directly with the user." *Id.* at 13.

Recent decisions of the New York Appellate Division confirm that privity is not required for Section 2-313 claims that solely allege economic loss where the defendant allegedly made specific representations in advertising and sales literature upon which plaintiffs relied. *See*

*Jesmer v. Retail Magic, Inc.*, 863 N.Y.S.2d 737, 739, 746–47 (N.Y. App. Div. 2008) (finding that end user plaintiff alleging economic loss plausibly alleged breach of express warranty against manufacturer based on manufacturer's brochure and absent privity); *Murrin v. Ford Motor Co.*, 756 N.Y.S.2d 596, 597 (N.Y. App. Div. 2003) (noting that privity is not required to plead breach of an express warranty where plaintiff pled economic loss); *Chenango Cnty. Indus. Dev. Agency v. Lockwood Greene Engineers, Inc.*, 494 N.Y.S.2d 832, 834 (N.Y. App. Div. 1985) (finding that plaintiffs alleged breach of express warranty without privity where plaintiffs alleged economic loss and the defendant made specific representations in advertising and sales literature upon which plaintiffs relied); *see also Carcone v. Gordon Heating & Air Conditioning Co.*, 623 N.Y.S.2d 679, 680 (N.Y. App. Div. 1995) (citing *Randy Knitwear* as an exception to the general rule requiring privity for breach of express warranty claims where the plaintiff pled economic loss).

Federal courts in the Second Circuit have disagreed about whether *Randy Knitwear*'s holding was displaced by the subsequent enactment of the N.Y. U.C.C. Some federal courts reasoned that the commentary to Sections 2-313 and 2-318 of the N.Y. U.C.C. indicated "that *Randy Knitwear* remains controlling precedent despite the subsequent enactment of the UCC." *Gwinn v. Laird Superfood, Inc.*, 643 F. Supp. 3d 450, 458 (S.D.N.Y. 2022); *see also Brady v. Anker Innovations Ltd.*, No. 18-cv-11396, 2020 WL 158760 (S.D.N.Y. Jan. 13, 2020) (collecting federal cases); *Sitt v. Nature's Bounty, Inc.*, No. 15-cv-4199, 2016 WL 5372794, at *16 (E.D.N.Y. Sept. 26, 2016) (collecting cases). These decisions underscore the comments to Section 2-313, which explain that "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract." N.Y. U.C.C. § 2-313,

Official Cmt. 2 (discussing express warranties). The annotations to Section 2-318 further explain:

> the Code enlarges the number of prospective plaintiffs in a warranty action but it does not increase the number of potential defendants. In no way is the Code intended to limit the extension of warranty protection by the courts to a greater number of plaintiffs or the expansion of the manufacturer's liability as in *Randy Knitwear*.

N.Y. U.C.C. § 2-318, N.Y. Annotations.

By contrast, other federal courts addressing Section 2-313 claims reinstated the privity requirement on the grounds that *Randy Knitwear* "preceded the enactment of the [N.Y.] U.C.C." and therefore the N.Y. U.C.C. "displaced" *Randy Knitwear*'s holding. *Ebin v. Kangadis Food Inc.*, No. 13-cv-2311, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013); *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022) ("Under New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured.").

The Second Circuit resolved this disagreement between the federal district courts in 2023, when it held in *MacNaughton* that privity is a required element of a breach of express warranty claim. 67 F.4th at 101 (citing *Ebin*, 2013 WL 6504547, at *6). In that case, the plaintiff failed to allege breach of an express warranty because she alleged that she purchased the products in question "online" without specifying whether she purchased them from the defendant's website or through a third-party vendor. *Id.* The Second Circuit also found that two exceptions to the privity requirement invoked by the plaintiff—"the exception for when a defendant directly markets to consumers" and "the exception for products sold in a sealed container and ultimately absorbed by consumers"—did not apply because the plaintiff relied on out-of-circuit cases that conflicted with in-circuit case law. *Id.* It also found inapplicable

plaintiff's invocation of a third exception to the privity requirement where the manufacturer delivers to, and attempts to meet, the remote customer's requirements through a dealer because the plaintiff failed to allege the existence of a contract between the supplier and the defendant for her benefit. *Id*.

In requiring privity for the Section 2-313 claim, however, the Second Circuit in *MacNaughton* did not address or analyze the commentary to Sections 2-313 and 2-318 suggesting that the holding of *Randy Knitwear* remains good law even after the adoption of the N.Y. U.C.C. *See* N.Y. U.C.C. § 2-313, Official Cmt. 2 (explaining that "the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties *need not be confined either to sales contracts or to the direct parties to such a contract*") (emphasis supplied); N.Y. U.C.C. § 2-318, N.Y. Annotations ("In no way is the [N.Y. U.C.C.] intended to limit the extension of warranty protection by the courts to a greater number of plaintiffs or the expansion of the manufacturer's liability as in *Randy Knitwear*.").

Additionally, the Second Circuit's analysis of the direct marketing and sealed container exceptions to the privity requirement was limited to affirming the district court's reasoning—but the district court considered those exceptions in the context of evaluating the plaintiff's claims for breach of *implied* warranty, not for breach of *express* warranty—the claim at issue in this case. *See MacNaughten v. Young Living Essential Oils, LC*, 575 F. Supp. 3d 315, 334 (N.D.N.Y. 2021), *aff'd in part & vacated in part*, 67 F.4th 89 (2d Cir. 2023) (discussing exceptions in the course of granting defendant's motion to dismiss plaintiff's breach of *implied* warranty claims for lack of privity). Moreover, the district court declined to apply the invoked exceptions, relying on other district court cases considering those exceptions to claims for breach of *implied* warranty. *Id.* (citing *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 586 (S.D.N.Y. 2021))

(dismissing breach of implied warranty claim for products that plaintiff did not purchase directly from defendant); *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015) (finding that plaintiff plausibly alleged a breach of *express* warranty claim absent privity but dismissing breach of *implied* warranty claims for lack of privity and declining to recognize a "sealed food products or medicines" exception for *implied* warranty claims because the cited case law was displaced by the N.Y. U.C.C.); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 262 (E.D.N.Y. 2014) (dismissing breach of *implied* warranty claims involving cosmetics products)). As a result, *MacNaughton* does not substantively address the application of exceptions to the privity requirement for breach of *express* warranty claims.

As a general rule, a decision of the Second Circuit is "binding [on a district court] unless and until it is overruled by the [Second Circuit] *en banc* or by the Supreme Court." *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 100–01 (2d Cir. 2021). Diversity cases involving a state law claim present an exception to this general rule "because the ultimate source for state law adjudication in diversity cases is the law as established by the constitution, statutes, or authoritative court decisions of the state." *Id.* at 101. In such cases, a court is "bound to apply New York law as determined by the New York Court of Appeals even when a decision of the New York Court of Appeals conflicts with [Second Circuit] precedent." *Id.*

Here, the Second Circuit's recent decision in *MacNaughton* requiring privity for breach of express warranty claims conflicts with the New York Court of Appeals' earlier decision in *Randy Knitwear*, 11 N.Y.2d at 16, dispensing with the privity requirement as well as recent decisions of the New York Appellate Division confirming that privity is not required in a Section 2-313 claim alleging solely economic loss where the defendant allegedly made specific representations in advertising and sales literature upon which plaintiffs relied. *See Jesmer*, 863

N.Y.S.2d at 739, 746–47; *Murrin*, 756 N.Y.S.2d at 597; *Chenango Cnty.*, 494 N.Y.S.2d at 834;

*In re E. & S. Districts Asbestos Litig.*, 772 F. Supp. 1380, 1390 (E.D.N.Y. 1991), *aff'd in part,*

*rev'd in part sub nom. In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992)

(observing that "while a federal court is not bound by lower state court decisions, they do have

great weight in informing the court's prediction on how the highest court of the state would

resolve the question"). I am thus "bound to apply New York law as determined by the New York

Court of Appeals." *Glob. Reinsurance Corp. of Am.*, 22 F.4th at 100–01.[5]

      Here, the Complaint alleges a plausible breach of express warranty claim. The Complaint

alleges that the front and back label of the Product contained an express warranty that the

Product contained 420 mg of magnesium derived from magnesium glycinate. (Compl. ¶¶ 11–13,

31.) The Complaint also alleges that Cohen was injured by the alleged breach of the express

warranty because she purchased a product that contained less magnesium derived from

magnesium glycinate than promised and paid more than she would have for such a product, if

she would have purchased it at all. (*Id.* ¶¶ 32–33.) The Complaint also alleges that Cohen

purchased the Product from a Target retail store and that, prior to making her purchase on that

occasion and others, Cohen viewed the specific representations on the front and back label of the

Product, which were made to advertise and sell the product. *See Randy Knitwear*, 11 N.Y.2d at

16 (holding privity is not required for claims "by a remote purchaser against a manufacturer"

---

[5] Nutricost argues that I am required to follow the Second Circuit's statement of New York law, but the cases Nutricost cites for this proposition are inapposite because the courts in those cases were not sitting in diversity and considering solely state law claims—rather, the courts were considering questions of federal or constitutional law. (Reply Br. at 7 (citing *United States v. Sanders*, No. 23-cr-78, 2023 WL 8790309, at *2 (E.D.N.Y. Dec. 19, 2023) (considering federal criminal law on motion to dismiss indictment for felon-in-possession charge); *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 653 (S.D.N.Y. 2021) (applying federal law to evaluate a Section 1983 claim).)

where the plaintiff alleged only economic loss and where the manufacturer is alleged to have

"induced the purchase by representing the quality of the goods in public advertising and on

labels which accompanied the goods"); *Carcone*, 623 N.Y.S.2d at 680 (citing *Randy Knitwear* as

an exception to the general rule requiring privity for breach of express warranty claims);

*Chenango Cnty.*, 494 N.Y.S.2d at 834 (finding that plaintiffs alleged breach of express warranty

claim without privity where plaintiffs alleged that defendant made specific representations in

advertising and sales literature upon which plaintiffs relied). Accordingly, I find that Cohen has

plausibly alleged a breach of express warranty claim under New York law and I deny Nutricost's

Motion to Dismiss this claim.

###    III.     Cohen Does not Seek Leave to Amend.

Cohen does not seek permission to amend the Complaint. Although the Second Circuit

"strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under

Rule 12(b)(6)," I decline to grant Cohen leave to amend. *Noto v. 22nd Century Grp., Inc.*, 35

F.4th 95, 107 (2d Cir. 2022) (affirming denial of leave to amend). "A court should freely give

leave when justice so requires, but it may, in its discretion, deny leave to amend for good reason,

including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP*

*Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (same).

Granting Cohen leave to amend would unduly prejudice Nutricost. *Jajati v. JPMorgan*

*Chase Bank, N.A.*, No. 22-cv-07676, 2024 WL 99659, at *5–6 (E.D.N.Y. Jan. 9, 2024)

(declining to grant leave to amend because to do so would unduly prejudice defendant where

plaintiff did not amend by the deadline, explain his failure to amend, or seek leave to amend in

his opposition to the motion to dismiss). On October 27, 2023, Nutricost filed a pre-motion letter

that previewed for Cohen the grounds on which it intended to move to dismiss the Complaint.

(*See* ECF No. 13.) Cohen's response did not indicate that she wished to amend the Complaint.
(*See* ECF No. 14.) The order for the Motion to Dismiss permitted Cohen to review Nutricost's
Motion to Dismiss and to file an amended complaint as of right under Rule 15(a)(1)(B), Fed. R.
Civ. P., by January 5, 2024. (ECF No. 15.) That same order warns that "[i]t is unlikely that
plaintiff will have a further opportunity to amend." (*Id.* at 1.) The January 5, 2024 deadline
passed and Cohen chose to oppose the Motion to Dismiss rather than to amend the Complaint.
Cohen's opposition brief is silent as to why she did not choose to amend and makes no request
for leave to amend to cure any deficiencies in the Complaint. (*See* Opp'n Br.) Accordingly, I
decline to grant Cohen leave to amend to address the deficiencies in the fraudulent concealment
claim.

## CONCLUSION

For the following reasons, I grant Nutricost's Motion to Dismiss (ECF No. 22) as to the
claim for fraudulent concealment and deny the Motion as to the claims for breach of express
warranty under N.Y. U.C.C. § 2-313 and for violations of Sections 349 and 350 of the N.Y.
General Business Law. I also dismiss as moot the portions of the Motion that seeks to dismiss the
withdrawn claim for breach of implied warranty of merchantability under N.Y. U.C.C. § 2-314
and the claims of absent, out-of-state putative members of the proposed nationwide class on
personal jurisdiction grounds.

Dated: Central Islip, New York
August 20, 2024

          */s/ Nusrat J. Choudhury*
          NUSRAT J. CHOUDHURY
          United States District Judge